UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARNEST S. HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>SEXON, et al.,<br><br>    Defendants. | Case No.: 1:18-cv-00080-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 19] |

Plaintiff Earnest S. Harris is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion to dismiss, filed July 10, 2018.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Sexton, Aquirre, Stewart, Lambert, Gutierrez, L. Cellobos, and I. Ramirez for subjecting Plaintiff to conditions of confinement in violation of the Eighth Amendment.

As previously stated, on July 10, 2018, Defendants filed the instant motion to dismiss the action on the ground that Defendants are entitled to qualified immunity. (ECF No. 19.) Plaintiff filed an opposition on August 10, 2018, and Defendants filed a reply on August 16, 2018. (ECF Nos. 22, 27.)

1

## II.

## LEGAL STANDARD

A motion to dismiss, based on res judicata grounds, is properly made under Federal Rule of Civil Procedure 12(b)(1). Gupta v. Thai Airways Intern., Ltd., 487 F.3d 759, 763 (9th Cir. 2007). However, the court applies California law on claim preclusion to cases brought in federal court under 42 U.S.C. § 1983. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980).

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

///
///

**III.**

**DISCUSSION**

**A.     Summary of Plaintiff's Complaint**

On May 8, 2015, Plaintiff arrived at California State Prison, Corcoran (COR) security housing unit (SHU). Every thirty minutes an officer would walk down the tier and excessively bang on each cell door with a small metal pipe. The banging on the cell doors occurs 48 times a day. Plaintiff cannot sleep during the day or at night which has led to depression and anxiety. The only time Plaintiff is free from the "banging" was when he is on the yard and will often fall asleep while out on the yard. Plaintiff confronted several officers, including Defendants Sexton, Aquirre, Stewart, Lambert, Gutierrez, L. Cellobos, and I. Ramirez regarding the noise. The officers simply responded that they had to do it or its "metal on metal". Plaintiff has been subjected to the noise level in the SHU for over two years.

Plaintiff contends that in 2014 a policy and procedure began in which the California Department of Corrections and Rehabilitation (CDCR) put metal boxes on all SHU cell doors throughout the prisons in the State of California. The wardens of each prison made a policy that all officers working in the SHU would hit a metal pipe on the metal box to send a message that a welfare check was conducted on each unit in an effort to combat the suicide rate of inmates housed in the SHU who are in the mental health system or triple C. Plaintiff submits that he is not a participant in the mental health system or triple C and "security checks" should not be conducted for his cell.[1] Plaintiff also submits that Defendants do not want to conduct the welfare checks and there are ways to do the security checks without loud banging. Defendants implement the welfare checks with loud bangs to disturb the inmates so they will file complaints.

**B.     Defendants' Motion to Dismiss**

1.     <u>Parties Arguments</u>

Defendants argue they are entitled to qualified immunity because they are not at liberty to stop

---

[1] Although Plaintiff does not explicitly name the policy at issue in his complaint, it is evident from his allegations and attachments that he is referring to the Guard One policy implemented by the Coleman Court. (ECF No. 12 at 16, 18.)

using the Guard One protocol, or even to decrease the frequency with which Guard One welfare checks are conducted, because at all times they have acted in accordance with an order from the court in Coleman v. Brown, No. 2:90-cv-00520-KJM-DB, a court-monitored class action that has been ongoing for over twenty years. Defendants further argue that Plaintiff's claims for injunctive relief should be dismissed based on judicial comity.

Plaintiff argues that Defendants are not entitled to qualified immunity because their actions go beyond what is necessary to perform the Guard One welfare checks and that he is not subject to the Guard One Policy because he is not a participant in the mental health system. Plaintiff further argues that the Guard One Policy should not have been implemented as to all inmates.

In response, Defendants argue that they have complied with the court's order in Coleman which was implemented to create sound which entitles them to qualified immunity. Defendants further argue that Plaintiff cannot seek injunctive relief in this action to terminate and/or modify the Guard One Policy.

2. Request for Judicial Notice and Background of Guard One Policy

Defendants request the Court take judicial notice of the following documents:

a. A printout of the relevant pages in the PACER docket sheet for Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), printed on March 9, 2018, Exhibit A;

b. Order dated April 5, 2013, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), ECF No. 4539, Exhibit B;

c. Order dated July 12, 2013, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), ECF No. 4693, Exhibit C;

d. Special Master's Report on his Expert's Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation, dated January 14, 2015, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), ECF No. 5258, Exhibit D;

e. An audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), ECF No. 5259, Exhibit E;

f. Order dated February 3, 2015, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-

1  DB (E.D. Cal.), ECF No. 5271, Exhibit F;

2        g.      Stipulation and Order Modifying February 3, 2015 Order Regarding First Watch Security/Welfare Checks at Pelican Bay State Prison Security Housing Unit, filed December 28, 2015, from Coleman v. Brown, Case No. 2:90-cv-00520-KJM-DB (E.D. Cal.), ECF No. 5393, Exhibit G. (Defs.' Req. for Jud. Not. (RJN) at 1-3, ECF No. 20.)

Federal Rule of Evidence 201 permits the Court to take judicial notice at any time. A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources who accuracy reasonably cannot be questioned. Fed. R. Evid. 201(b). Courts may take judicial notice of facts related to the case before it. Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1361-1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties). This Court may judicially notice the records and filing of other court proceedings. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002). This includes documents filed in state courts. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

The Court may take judicial notice of information on a government website when neither party disputes either the website's authenticity or the accuracy of the information displayed. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 999 (9th Cir. 2010 (taking judicial notice of school district's approved vendors publicly displayed on website); see also Paralyzed Veterans of Am. V. McPherson, No. C 06-4760 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008 (collecting cases). Here, Plaintiff does not contest the authenticity of the documents or the accuracy of the information presented. Accordingly, Defendants' request for judicial of Exhibits A through G is granted.

The Coleman action is a court-monitored class action that has been ongoing since 1990. The action relates to inmate mental health issues, and suicide prevention has been a target of the Coleman remedial effort and is an effort to identify, treat, and supervise inmates at risk for suicide. (RJN, Ex. D at 2.) The Coleman court ordered the California Department of Corrections and Rehabilitation

(CDCR) to undertake suicide prevention and reduction programs to be supervised by a Special Master. (RJN Ex. C at 5-6.)

On January 14, 2015, the Special Master issued a report on CDCR's suicide-prevention practices and the Guard One Policy was implemented. (RJN Ex. E at 14.) The Special Master recommended to CDCR that it continue to implement a directive (as set forth in the May 9, 2014, memo) that mandated Guard One welfare checks in the Security Housing Unit (SHU) every 30 minutes." (RJN Ex. D at 6; RJN Ex. E at 14-15.) The Coleman court adopted that recommendation on February 3, 2015, and ordered that it be implemented. (RJN Ex. F at 3.)

The Special Master's recommendation set forth the Guard One procedure and commented as follows:

> The Guard One system involves a hand-held "pipe," a metal disc that is attached to each cell door, and a software program. The officer conducting housing unit rounds is required to touch the end of the pipe to the disc on the cell door. The pipe will then emit a sound and the time of the contact wi[ll] be recorded on the pipe. The data from the pipe is then downloaded into the software program on a desktop computer in the housing unit by a supervisor, and is reviewed daily to ensure compliance. Although the Guard One offers dramatic improvement over previous practices, the technology can validate that correctional staff are conducting rounds at the required intervals, but it cannot assure that staff are actually observing the interior of each cell to verify the inmate's well-being.

(RJN Ex. E at 14, n.15.)

3. <u>Applicable Law and Analysis</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves both an objective and a subjective element. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health and safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Conditions which result in chronic, long term sleep deprivation may support a claim under the Eighth Amendment. See Chappell v. Mandeville, 706 F.3d 1052, 1057-61 (9th Cir. 2013); Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996); LeMaire v. Maass, 12 F.3d 1444, 1460 (9th Cir. 1993). Subjectively, if an objective deprivation is shown, a plaintiff must demonstrate that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303 (1991); Johnson, 217 F.3d at 733. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified

immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Defendants argue that they were "unaware of any precedent that would make it beyond question that prison officials implementing welfare checks to guard inmate suicides, but making noise while doing so, violate the Eighth Amendment." (Mot. at 7:3-5.) Further, the sounds made by the Guard One Welfare checks and frequency is governed by the Coleman orders.

As stated above, it is clearly established law that excessive noise which leads to an inmate suffering sleep deprivation may violate the Eighth Amendment. Keenan v. Hall, 83 F.3d at 1090-91; Jones v. Neven, 399 Fed. App'x 203, 205 (9th Cir. 2010); LeMaire v. v. Maass, 12 F.3d at 1460; see also Chappell v. Mandeville, 706 F.3d at 1057-61. Here, Plaintiff's allegations that Defendants' excessive banging on the metal pipe attached to the cell door to cause a disturbance during sleeping hours is sufficient to show that their conduct violated Plaintiff's rights under the Eighth Amendment to be free of chronic, long term sleep deprivation. An officer would not have believed that intentionally banging loudly on the cell doors with a metal pipe causing sleep deprivation over an extended period of time was reasonable or allowed under Coleman. Therefore, Defendants are not entitled to qualified immunity based on the present record.

Plaintiff seeks monetary damages and injunctive relief. With regard to Plaintiff's request for injunctive relief, Defendants argue it should be dismissed based on judicial comity. Plaintiff seeks an injunction to stop the "bamming of my celldoor." (ECF No. 12 at 12.) As stated in the Court's August 14, 2018, order, "[a] district court retains jurisdiction to enforce its judgments." Hook v. Ariz. Dept. of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992) (citing City of Las Vegas v. Clark County, Nev., 755 F.2d 697, 701 (9th Cir. 1985); see also Skelly v. Dockweiler, 75 F.SUpp. 11, 17 (S.D. Cal. 1947) (noting that a court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result). Plaintiff cannot seek to modify and/or terminate the court orders provided in the Coleman action. A claim regarding a modification and/or termination of the Coleman orders requires action to be requested in the action that issued the order. See Hook, 972 F.2d at 1014. Plaintiff therefore cannot seek systemic relief here for any modification or termination of those court orders.

However, Plaintiff can seek injunctive relief in this action as to the specific way Defendants are implementing the Guard One Policy as applied to him. See Pride v. Correa, 719 F.3d 1130, 1132 (9th Cir. 2013) (a plaintiff's claim for injunctive relief based solely on his behalf for medication care that relates to him only not barred by Plata class action). There is no showing that Plaintiff's individual claim for injunctive relief is duplicative or addressed in the Coleman action. Accordingly, Defendants' motion to dismiss Plaintiff's request for injunctive relief should be granted in part and denied in part.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss the action is granted in part and denied part as follows:

   a. Defendants' motion to dismiss based on qualified immunity is denied; and

   b. Defendants' motion to dismiss Plaintiff's request for injunctive relief seeking systemic reform of the Guard One Policy is granted, but it is denied as to Plaintiff's request for injunctive relief as to implementation of the policy as applied to him based on his allegations that Defendants have acted beyond the scope of the policy.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 5, 2018**

UNITED STATES MAGISTRATE JUDGE